UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE


| | |
|---|---|
| STACEY L. RUSSELL BUDENSIEK, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, )<br>Commissioner of Social Security, )<br>)<br>Defendant. ) | No. 3:12-CV-455<br>(VARLAN/GUYTON) |

## REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding disposition by the District Court of Plaintiff's Motion for Judgment on the Pleadings and Memorandum in Support [Docs. 15 and 16] and Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 19 and 20]. Plaintiff Stacey L. Budensiek ("Plaintiff") seeks judicial review of the decision by Administrative Law Judge ("ALJ"), the final decision of the Defendant Carolyn W. Colvin, Commissioner of Social Security ("the Commissioner").

On May 20, 2010, the Plaintiff filed an application for supplemental security income, claiming a period of disability which began on June 1, 1992. [Tr. 138-45]. After her application was initially denied and denied again upon reconsideration, the Plaintiff requested a hearing. [Tr. 96]. On February 22, 2012, a hearing was held before an ALJ to review the Plaintiff's claim. [Tr. 32-55]. On March 30, 2012, the ALJ found that the Plaintiff was not disabled. The Appeals

1

Council denied the Plaintiff's request for review; thus, the decision of the ALJ became the final decision of the Commissioner.

The Plaintiff now seeks judicial review of the Commissioner's decision.

I. **ALJ FINDINGS**

The ALJ made the following findings:

1. The claimant has not engaged in substantial gainful activity since May 20, 2010, the application date (20 CFR 416.971 *et seq.*).

2. The claimant has the following severe impairments: chronic obstructive pulmonary disease; depressive disorder; anxiety disorder; personality disorder; limited intellectual functioning: borderline to low average; and history or polysubstance abuse, in self-reported remission (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) with standing or walking eight hours in an eight-hour workday, up to four hours at a time, and sitting up to eight hours in an eight-hour workday, up to four hours at a time. She is precluded from work that would expose her to dust, fumes, smoke, chemicals, noxious gases, temperature extremes or high humidity. She can understand and remember simple and detailed tasks, but cannot make independent decisions at an executive level. She can maintain concentration, persistence and pace for a two-hour period in an eight-hour workday with customary breaks. She can interact appropriately with the public, coworkers and supervisors within these restrictions, but would work better with things than with people. She can adapt to infrequent change and set goals within these restrictions.

5. The claimant has no past relevant work (20 CFR 416.965).

6. The claimant was born on December 21, 1974, and was 35 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7. The claimant has a limited education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform ( 20 CFR 416.969 and 416.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, since May 2010, the date the application was filed (20 CFR 416.920(g)).

[Tr. 16-24].

## II.   DISABILITY ELIGIBILITY

To qualify for SSI benefits, a plaintiff must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. An individual is eligible for SSI if he has financial need and he is aged, blind, or under a disability. See 42 U.S.C. § 1382(a).

"Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). An individual shall be determined to be under a disability only if his physical and/or mental impairments are of such severity that he is not only unable to do his previous work, but also cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the

3

Case 3:12-cv-00455-TAV-HBG   Document 21   Filed 07/12/13   Page 3 of 17   PageID #: 95

national economy, regardless of whether such work exists in the immediate area in which he lives, whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).

A claimant bears the burden of proof at the first four steps. Id. The burden of proof shifts to the Commissioner at step five. Id. At step five, the Commissioner must prove that there is work available in the national economy that the claimant could perform. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

### III.  STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the

4

correct legal standards and whether the findings of the ALJ are supported by substantial evidence." Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405 (6th Cir. 2009) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)). If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed. Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004); 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007) (quotation omitted); see also Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison v. NLRB, 305 U.S. 197, 229 (1938)).

It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) (quoting Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." Walters, 127 F.3d at 528.

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner. See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004). The Court may, however, decline to

5

reverse and remand the Commissioner's determination if it finds that the ALJ's procedural errors were harmless.

An ALJ's violation of the Social Security Administration's procedural rules is harmless and will not result in reversible error "absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the [ALJ]'s procedural lapses." Wilson, 378 F.3d at 546-47. Thus, an ALJ's procedural error is harmless if his ultimate decision was supported by substantial evidence *and* the error did not deprive the claimant of an important benefit or safeguard. See id. at 547.

On review, Plaintiff bears the burden of proving her entitlement to benefits. Boyes v. Sec'y of Health & Human Servs., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

**IV. EVIDENCE**

The Plaintiff was seventeen years old on her alleged onset date and was thirty-seven years old at the time of the ALJ's decision. The last grade she completed was the tenth grade, and she has previously worked at Weigel's, Walmart, and at a tobacco store as a cashier. [Tr. 41]. The Plaintiff has not worked since March 31, 2004. [Tr. 179].

*A.    Medical Evidence*

In August 2006, the Plaintiff began seeing Gary Walters, M.D., and continued to see him through 2010. [Tr. 204]. On June 5, 2010, Dr. Walters diagnosed the Plaintiff with borderline personality disorder with psychotic features, major depressive disorder with psychotic features, and generalized anxiety disorder. [Tr. 940-45]. Dr. Walters also completed a questionnaire in August 2010 and opined that the Plaintiff demonstrated poor ability in the following areas:

6

concentrating, persisting and pacing; adapting to stressful circumstances in work or work-like settings; and relating predictably in social situations. [Tr. 940-44].

On October 5, 2009, psychological consultative examiner Tracy Allred, Ed. D., a Licensed Psychologist, examined the Plaintiff and diagnosed her with Anxiety Disorder, Post-Traumatic Stress Disorder, and Rule out Learning Disorder. [Tr. 647]. Dr. Allred also opined that the Plaintiff had moderate to marked limitations in social interaction and in the ability to adapt and tolerate stress associated with daily activities. [Tr. 647]. At the examination, the Plaintiff reported that she was able to do various daily activities without help from others, including cooking, laundry, driving, housecleaning, and paying bills. [Tr. 626].

On January 15, 2010, Frank D. Kupstas, Ph.D, completed a mental residual functional capacity assessment. [Tr. 936-38]. Dr. Kupstas opined that the Plaintiff could remember/carry-out simple instructions; maintain concentration, persistence and pace for periods of at least 2 hours; relate appropriately to supervisors/peers; and adapt to routine/infrequent changes in the workplace. [Tr. 938].

In July 2010, state agency psychological consultant Cynthia Jackson, Ph.D., examined the Plaintiff's records. [Tr. 949-55]. Dr. Jackson opined that the Plaintiff could understand and remember simple and detailed tasks but could not make independent decisions at an executive level; she could maintain concentration, pace, and persistence for a two-hour period within an eight-hour workday with customary breaks; she could interact appropriately with the public, coworkers and supervisors within these restrictions but would work better with things than with people; and she could adapt to infrequent change and set goals within these restrictions. [Tr. 949-55]. Dr. Jackson's assessment was later reviewed by Eran M. Stanley, M.D., who agreed with Dr. Jackson's opinion. [Tr. 1022].

7

In December 2010, the Plaintiff underwent a mental evaluation during a psychiatric hospital admission performed by treating clinician Thimmappayya Hasanadka, M.D. [Tr. 1006-13]. Dr. Hasanadka opined that the Plaintiff's intelligence appeared to be average, based on her conversational ability, vocabulary and level of education. [Tr. 1006-13]. Dr. Hasanadka also diagnosed the Plaintiff with a personality disorder NOS with cluster B features. [Tr. 1012].

Mary L. Barker, M.S, another psychological consultative examiner, evaluated the Plaintiff on March 30, 2011. [Tr. 1014-19]. She opined that the Plaintiff suffered from major depression, anxiety disorder and borderline intellectual functioning. [Tr. 1017]. The Plaintiff obtained a full scale IQ score of 70. [Tr. 1016]. Ms. Barker also opined that the Plaintiff had moderate to marked limitations with the ability to adapt. [Tr. 1016].

B.  *Other Evidence*

Independent vocational expert (VE), Katharine Reynolds-Bradford, testified at the hearing on this matter. [Tr. 50-55]. She testified that the Plaintiff's work history did not amount to relevant work. [Tr. 51]. The ALJ posed a hypothetical question to the VE incorporating the residual functional capacity, Supra 2. [Tr. 51-53]. The VE testified that there are many jobs available in the regional and national economy that the Plaintiff could perform, such as an assembler, a packager, a production laborer, a machine tender, and an inspector. [Tr. 51-52].

V.  **POSITIONS OF THE PARTIES**

The Plaintiff asserts that the ALJ committed three errors. First, the Plaintiff argues that the ALJ's decision giving great weight to Dr. Allred's opinion is inconsistent with the finding that the Plaintiff is not disabled. [Doc. 16 at 8-9]. Second, the Plaintiff asserts that the ALJ's

8

residual functional capacity determination is inconsistent with Ms. Barker's opinion. [Id. at 9]. Lastly, the Plaintiff argues that the decision's analysis of Medical Listing 12.05C does not comport with the rules. [Id. at 8-9].

The Commissioner responds that the ALJ properly considered the medical opinions of the record and substantial evidence supports the decision. [Doc. 20 at 11]. The Commissioner argues that the ALJ gave great weight to Dr. Allred's opinion only with regard to the Plaintiff's ability to adapt. [Id. at 13]. In addition, the Commissioner contends that the ALJ weighed the consultative examiners' opinions accordingly. [Id. at 14]. Finally, the Commissioner asserts that the Plaintiff failed to present evidence satisfying the diagnostic description for Medical Listing 12.05C and that the ALJ properly found the Plaintiff's mental impairment does not meet the Listing. [Id. at 5].

## VI. ANALYSIS

The Court will address the Plaintiff's allegations in turn.

### A. Weight Afforded to Dr. Allred's Opinion

The Plaintiff argues that the ALJ's decision giving great weight to the opinion of Dr. Allred is inconsistent with the finding that the Plaintiff is not disabled. [Doc. 16 at 8]. She contends that Dr. Allred's opinion that the Plaintiff had moderate-to-marked limitations with the ability to concentrate and persist, interact socially, and adapt to stress associated with daily activities support a finding of disability. [Doc. 16 at 9].

9

The Commissioner responds that the ALJ did not give great or substantial weight to Dr. Allred's opinion as a whole. [Doc. 20 at 13]. The Commissioner argues that the ALJ only gave weight to Dr. Allred's specific opinion related to the Plaintiff's ability to adapt. [Id.].

In his decision, the ALJ stated that Dr. Allred's opinion, that the Plaintiff had moderate to marked limitations in social interaction and in the ability to adapt and tolerate stress associated with daily activities, was consistent with the Plaintiff's own reported ability to independently do the cooking, laundry, driving, housecleaning, and paying bills. [Tr. 22]. However, the ALJ's finding concerning the Plaintiff's concentration and persistence were based upon state agency psychologist Dr. Jackson's July 2010 opinion. [Id.].

The ALJ is obligated to "evaluate every medical opinion . . . receive[d]." 20 C.F.R. § 404.1527(c). Nonetheless, the ALJ determines the ultimate issue of disability. 20 C.F.R. § 404.1527(d)(1). In evaluating disability, the ALJ is to "review all of the medical findings and other evidence that support a medical source's statement that [the plaintiff] is disabled." 20 C.F.R. § 404.1527(d)(2). The Plaintiff cites Social Security Ruling 96-8 which states, "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." The Ruling also provides that the decision must explain how the ALJ resolved any inconsistencies in the record. SSR 96-8p, 1996 WL 374184, *7 (July 2, 1996). It is well-established, however, that an ALJ is not required to discuss all of the relevant evidence in the record, nor is he required to comment on every finding in a medical opinion. See Boseley v. Comm'r of Soc. Sec., 397 F. App'x 195, 199 (6th Cir. 2010) ("Neither the ALJ nor the Council is required to discuss each piece of data in its opinion, so long as they consider the evidence as a whole and reach a reasoned conclusion.").

The residual functional capacity determination is not completely consistent with Dr. Allred's opinion but the ALJ explained his decision. For example, the ALJ noted that Dr. Jackson's opinion is a more "specific functional description, than the generalized limitations of Dr. Allred . . . and Dr. Jackson considered and properly incorporated the limitations in functional ability opined by Dr. Allred." [Tr. 22]. Dr. Jackson's opinion was properly given considerable weight because it is "well supported by and consistent with the overall evidence of record, including examination findings, and treatment notes." [Tr. 22]. Dr. Stanley, another State agency psychological consultant, also reviewed the Plaintiff's records in May 2011 and concurred with Dr. Jackson's opinion. [Tr. 1022]. Therefore, the Court finds that the ALJ properly evaluated all the medical opinions in the record and made a finding supported by substantial evidence.

Accordingly, the Court finds that the Plaintiff's argument is not well-taken.

### B. Weight Afforded to Mary Barker's Opinion

The Plaintiff argues that the residual functional capacity determination is also inconsistent with Ms. Barker's opinion. [Doc. 16 at 9]. The Plaintiff argues that the residual functioning capacity determination is more consistent with Dr. Kusptas's opinion, which was not discussed in the decision. [Id.].

The Commissioner responds that the ALJ's mental residual functioning capacity determination is identical to the limitations assessed by Dr. Jackson, whose opinion was cited multiple times in the ALJ's decision. [Doc. 20 at 14]. The Commissioner also argues that Dr. Jackson's opinion was appropriately afforded considerable weight because it was consistent with overall evidence of the record. [Id. at 12].

11

At the fourth step of the analysis, the ALJ noted that Ms. Barker opined that the Plaintiff had marked limitations in adaptions. [Tr. 22]. The ALJ stated that more weight was given to Dr. Allred's opinion than to Ms. Barker's because Dr. Allred's opinion is more consistent with the overall evidence of record. [Tr. 22]. The ALJ's mental residual functional capacity determination states that Plaintiff can adapt to infrequent changes and set goals within certain restrictions. [Tr. 18-19].

Under the Social Security Act and its implementing regulations, an examining source is generally given more weight than someone who has not examined a plaintiff. 20 C.F.R. § 404.1527(c)(1); see Kornecky v. Comm'r of Soc. Sec., 167 F. App'x 496, 508 (6th Cir. 2006). However, it has also been stated that in appropriate situations the ALJ may give, "great, even dispositive, weight to a [non-examining physician's] opinion." Matelski v. Comm'r of Soc. Sec., No. 97-3366, 1998 WL 381361, at *5 (6th Cir. June 25, 1998). The weight given to non-examining sources "will depend on the degree to which they provide supporting explanations for their opinions." 20 C.F.R. § 404.1527(c)(3). In addition, a non-examining source will be "evaluate[d by] the degree to which these opinions consider all of the pertinent evidence" in a plaintiff's claim, "including opinions of . . . other examining sources." 20 C.F.R. § 404.1527(c)(3).

The appropriate weight to be given to non-examining and examining sources is determined upon the following factors: supportability,[1] consistency with the record as a whole, whether the opinion is from a specialist, and other factors which support or contradict an

---

[1] Supportability is described as "[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight" that is given to the opinion. 20 C.F.R. § 404.1527(c)(3). "The better an explanation a source provides for an opinion, the more weight we will give that opinion." Id.

12

opinion. 20 C.F.R. § 404.1527(c)(3)-(6). Nonetheless, the ultimate decision of disability rests with the ALJ. King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).

As mentioned above, Ms. Barker opined that the Plaintiff's ability to adapt to and tolerate ordinary workplace stressors was moderately-to-markedly limited. [Tr. 1027].

In this case, the ALJ explained his decision to afford little weight to Ms. Barker's opinion and instead afford considerable weight to Dr. Jackson's opinion. [Tr. 22]. The ALJ explained that Dr. Jackson's opinion was supported by the evidence and clearly consistent with the record. [Tr. 22]. The ALJ also noted that Ms. Barker's opinion is inconsistent with the evidence in the record, including the Plaintiff's own testimony regarding her daily activities. [Tr. 22]. Specifically, the Plaintiff stated that she cooks, does the laundry, drives, cleans the house, and pays the bills [Tr. 21]. The ALJ noted that these daily activities "would be expected to be beyond the capacity of a mentally retarded person." [Tr. 21].

The Plaintiff argues that the ALJ erred because the decision did not mention Dr. Kusptas's opinion. [Doc. 16 at 9]. While the ALJ failed to mention Dr. Kusptas's opinion, Dr. Kusptas's opinion was identical to Dr. Jackson's opinion, which the ALJ discussed and adopted. Dr. Jackson stated in his mental residual functioning capacity that the Plaintiff "can adapt to infrequent change and set goals within the restrictions applied above." [Tr. 955]. This opinion is discussed and explained in the ALJ's decision and is clearly consistent with the residual functional capacity. [Tr. 19]. Dr. Stanley also subsequently reviewed Dr. Jackson's opinion and agreed with the conclusion. [Tr. 22].

Accordingly, the Court finds that the Plaintiff's argument is unavailing.

13

### C. Medical Listing 12.05C Analysis

The Plaintiff asserts that the ALJ's analysis for Medical Listing 12.05C did not comport with the rules. [Doc. 16 at 9]. The Commissioner responds that the Plaintiff has not demonstrated that he meets Medical Listing 12.05C. [Doc. 20 at 5].

In the decision, the ALJ stated that although the Plaintiff had obtained a full scale I.Q. score of 70, her remaining scores included a verbal comprehension score of 72; a perceptual reasoning score of 71; a working memory score of 71; and a processing speed score of 84, which puts her overall intellectual abilities in the borderline range. [Tr. 21]. The ALJ noted that the Plaintiff's daily activities were not consistent with the capacity of a mentally retarded individual, particularly her ability to do the following without help from anyone: cooking, laundry, driving, housecleaning and paying bills. [Tr. 21]. The ALJ also stated that the Plaintiff reported that her hobbies included doing crossword puzzles and reading love stories. [Tr. 21]. Finally, the ALJ stated that in the evaluation performed in December 2010, during a psychiatric hospital admission, Dr. Hasanadka opined that the Plaintiff's intelligence "appeared to be average, based on her conversational ability, vocabulary and level of education." [Tr. 21].

> Listing 12.05C provides in relevant part:
>
> 12.05 Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> . . . .
>
> > C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

Normally, a claimant can establish disability by demonstrating all of the medical findings listed for an impairment. 20 C.F.R. § 404.1525(c)(3). "If a claimant does not have one of the findings, however, [he or] she can present evidence of some medical equivalent to that finding." Bailey v. Comm. Soc. Sec., No. 09-6389, (6th Cir. Mar. 11, 2011) (citing §§ 404.1525 & 404.1526). To demonstrate such a medical equivalent, the claimant must present "medical findings equal in severity to *all* the criteria for the one most similar listed impairment." Sullivan v. Zebley, 493 U.S. 521, 531 (1990) (emphasis in original).

Thus, to be disabled under Listing 12.05C, the Plaintiff must establish that: (1) her valid verbal, performance, or full scale IQ score was between 60 and 70; (2) she had significantly subaverage general intellectual functioning with deficits in adaptive functioning, which manifested prior to age 22; and (3) she has a mental or physical impairment imposing an additional and significant work-related limitation.

The regulations allow the ALJ to call into question the validity of any IQ tests in conjunction with other factors. See Dragon v. Comm'r of Soc. Sec., 470 F. App'x 454, 462 (6th Cir.2012). "In assessing the validity of a claimant's I.Q., '[i]nformation from both medical and nonmedical sources may be used to obtain detailed descriptions of the individual's activities of daily living; social functioning; concentration, persistence and pace; or ability to tolerate increased medical demands (stress).'" Brown v. Sec'y of Health & Hum. Servs., 948 F.2d 268, 269 (6th Cir. 1991) (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(D)).

The Court finds that there was substantial evidence supporting the ALJ's decision to invalidate the Plaintiff's full scale I.Q. score of 70. The present case can be likened to Suttles v. Comm'r of Soc. Sec., where the court found that substantial evidence did exist to support the

ALJ's invalidation of the claimant's I.Q. score. No. 1:12-cv-658, 2013 WL 3083468, *5 (S.D. Ohio June 18, 2013). In Suttles, the plaintiff's I.Q. scores were at the very top of the mild mental retardation range. The plaintiff had not been diagnosed with mental retardation by any examining or non-examining doctors, but instead, had been diagnosed with borderline intellectual functioning. [Id. at *5]. In Suttles, the ALJ properly assessed the conflicting evidence and the court found that there was substantial evidence supporting the invalidation of the I.Q. score. [Id.]. Similarly, in the present case, although the Plaintiff had obtained a full scale I.Q. score of 70, she had never been diagnosed with mental retardation and had only been diagnosed with borderline intellectual functioning. [Tr. 1017]. The Plaintiff also conceded, during the hearing, that when examined in elementary school she was considered to be "on the borderline of being what they call mental retardation." [Tr. 48].

In light of this evidence, the Court finds the Plaintiff's argument unavailing.

Case 3:12-cv-00455-TAV-HBG   Document 21   Filed 07/12/13   Page 16 of 17   PageID #: 108

## VII. CONCLUSION

Accordingly, the Court finds that substantial evidence supports the ALJ's findings and conclusions. Therefore, it is hereby **RECOMMENDED**[2] that the Plaintiff's Motion for Judgment on the Pleadings [**Doc. 15**] be **DENIED**, and that the Commissioner's Motion for Summary Judgment [**Doc. 19**] be **GRANTED**.

Respectfully submitted,

　　　s/ H. Bruce Guyton　　　
United States Magistrate Judge

---

[2]Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Fed'n of Teachers, 829 F.2d 1370 (6th Cir. 1987).